# United States Court of Appeals
## For the First Circuit

No. 05-1864

EVELYN CRUZ-GÓMEZ,
Plaintiff, Appellee,

v.

VÍCTOR RIVERA-HERNÁNDEZ, SHEILA ROBLES-BÁEZ;
CONJUGAL PARTNERSHIP RIVERA-ROBLES; ROMÁN M. VELASCO,
SECRETARY OF THE DEPARTMENT OF LABOR AND HUMAN RESOURCES
OF PUERTO RICO;
Defendants Appellants,

LUIS PIÑOT-ARECCO, JANE DOE; CONJUGAL PARTNERSHIP
PIÑOT-DOE; GLADYS RIVERA-MEDINA,
Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

---

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Hansen,[*] Senior Circuit Judge.

---

Celina Romany-Siaca, for appellants.
Marie Elsie López-Adames, with whom González López & López
Adames, was on brief, for appellee.

---

April 7, 2006

---

[*] Of the Eighth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. This is an interlocutory appeal in a political discrimination case brought pursuant to 42 U.S.C. § 1983 (2000). Defendant-Appellant Víctor Rivera-Hernández ("Rivera") here appeals the district court's opinion and order denying his motion for summary judgment. We dismiss for lack of appellate jurisdiction.

## I. Background

Plaintiff-Appellee Evelyn Cruz-Gómez ("Cruz") was hired on February 1, 1993 as Legal Consultant V, a trust position, by the Puerto Rico Department of Labor ("PR-DOL").[1] Cruz was appointed to this position by the New Progressive Party ("NPP") administration in power in Puerto Rico at the time.

In December 1995 or January 1996, at Cruz's request, the Central Office for Labor and Personnel Matters reclassified her position as "Director of the Bureau of Legal Affairs," a career position. Cruz thereafter occupied the career position of Director of the Bureau of Legal Affairs. In this job, she performed the

---

[1] Public employees in Puerto Rico are categorized as "career" or "trust/confidential" employees. Colón-Santiago v. Rosario, No. 05-1238, 2006 U.S. App. LEXIS 4045, at *3 n.1 (1st Cir. Feb. 21, 2006). Trust employees are those who "intervene or collaborate substantially in the formation of the public policy, [and] . . . advise directly or render direct services to the head of the agency." P.R. Laws Ann. tit. 3, § 1350. They are of "free selection and removal." Id. § 1350. Career employees, by contrast, are "selected strictly on merit and can be removed only for cause." Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1213 n.3 (1st Cir. 1989) (citing 3 P.R. Laws Ann. §§ 1301, 1331-1338).

same functions she had performed as a trust employee. The NPP was still in power at the time of this change. Furthermore, in 2000, PR-DOL implemented a Qualification Plan, as a result of which Cruz's status as a career employee was certified and confirmed.

On November 5, 2000, general elections were held in Puerto Rico, and Governor Sila María Calderón of the Popular Democratic Party ("PDP") was elected. In January 2001, Rivera was appointed by Governor Calderón as the new Secretary of Labor of the Commonwealth and remained as such until June 2003.

Although Cruz had occupied the career position of Director of the Bureau of Legal Affairs since late 1995 or early 1996, she claims that her life at PR-DOL changed dramatically after the PDP victory in 2000 and the installation of Rivera as the head of PR-DOL. In particular, she states that she began to experience discrimination at the hands of her colleagues. For example, she claims that Rivera and Luis Piñot-Arecco ("Piñot"), one of her supervisors, continuously harassed her by requesting a series of complicated but useless reports to be completed in short periods of time. They consistently raised questions about her whereabouts, and Piñot restricted her to a specific work schedule. Furthermore, personnel from Rivera's office, instead of interacting with her, simply ignored her presence and authority as head of the Bureau of Legal Affairs.

Cruz states that the most significant change came when Rivera's Assistant Secretary for Human Resources, Gladys Rivera-Medina ("Rivera-Medina"), suddenly concluded, after Cruz had already served in the same position for more than four years, that Cruz's change in classification from a trust to a career employee was null and void given the fact that it was not preceded by the competition process required for career positions. On August 13, 2002, because it had been determined that Cruz's employment was null and void, Rivera, without any sort of pre-termination hearing, removed Cruz from her position as Director of the Bureau of Legal Affairs.[2]

As a result of her termination, Cruz, on July 24, 2003, filed a complaint in the United States District Court for the District of Puerto Rico seeking compensatory and punitive damages and reinstatement to her prior position. She alleged violation of her rights under the First and Fourteenth Amendments of the United States Constitution. Specifically, she claimed that her political affiliation with the NPP, which was known to Rivera and the other defendants she named, all of whom were affiliated with the PDP, was the reason that she was terminated.

---

[2] Rivera simply provided Cruz with a termination letter. Before Rivera gave Cruz this letter, he requested an opinion from the Central Office for Labor and Personnel Matters on the propriety of terminating Cruz. In his request, he stated his own opinion on the propriety of any termination. The Central Office, in its response, confirmed that Rivera's opinion was correct.

On January 31, 2005, Rivera filed a motion for summary judgment, requesting dismissal on the grounds a) that Cruz failed to show that she was the subject of political discrimination; b) that Cruz was not entitled to monetary damages from Rivera in his official capacity; c) that Cruz's right to due process under the First and Fourteenth Amendments was not violated given her failure to demonstrate the existence of a cognizable property interest and/or a legitimate claim of entitlement in continued employment; d) that Rivera was not liable under the respondeat superior doctrine; and e) that Rivera was entitled to qualified immunity given that he had sufficient grounds to believe Cruz's employment was null and void.

On February 28, 2005, Cruz filed a response in opposition to the summary judgment motion, alleging that she had established her case for political discrimination and violation of rights under the First and Fourteenth Amendments and that Rivera's actions were not protected by qualified immunity.

On April 18, 2005, the district court found that Cruz was not entitled to monetary damages from Rivera in his official capacity as a result of Eleventh Amendment immunity. However, the court denied the remainder of Rivera's motion, stating that disputed factual issues still remained and therefore summary judgment could not be granted. In particular, the court noted, first, that contrary to Rivera's argument that Cruz failed to show

that her political affiliation was a motivating factor behind her termination, Cruz had "put forward specific allegations which, if proved at trial, may be probative of discriminatory animus and suffice for the purpose of establishing a prima facie case of discrimination." Second, in assessing Rivera's proffered justification for Cruz's dismissal -- that Cruz was fired solely because of the nullity of her appointment, not as the result of any political discrimination -- the court noted that it was "unable to weigh the import of the Qualification Plan ratification" (which allegedly confirmed Cruz's career status) since neither party discussed the Qualification Plan in depth. The court also noted that Rivera neither conceded nor denied that Cruz satisfied each of the requirements in P.R. Laws Ann. tit. 3, § 1351 (2004), under which an employee may be reclassified as a career employee without being subject to the normal competitive process.[3] This particular deficiency, making it unclear whether Cruz's career appointment violated the Puerto Rico Personnel Act, led the court to decline to enter summary judgment on both Cruz's First Amendment and due process claims. Third, with regard to Rivera's claim of qualified immunity, the court noted that there was a disputed factual issue

---

[3] The district court noted, for instance, that the record made no mention of whether Cruz took or passed a test to qualify her for her position. The record was equally unclear as to whether changes "in the functions or in the organizational structure of the agency" justified Cruz's reclassification, as § 1351 requires.

as to whether Rivera's actions were motivated by Cruz's political affiliation.[4]

On May 10, 2005, Rivera filed a Notice of Interlocutory Appeal, contesting the district court's denial of his summary judgment motion.

## II. Discussion

On appeal, Rivera rehashes the same arguments he made before the district court in support of his summary judgment motion. For example, he argues that Cruz failed to bring forth evidence from which a reasonable juror could conclude a) that the decision to remove her from her employment was somehow related to her political affiliation; b) that she had a cognizable property interest in continued employment; and c) that Rivera was liable under the respondeat superior doctrine. Although these claims may be meritorious, we clearly have no jurisdiction to address them. Orders of the district court denying pretrial motions for summary judgment typically are not appealable at the time they are entered.

---

[4] In its opinion, the district court did not explicitly address Rivera's respondeat superior claim. This, however, does not matter for the purposes of this interlocutory appeal. As we discuss in greater depth below, if the district court had addressed Rivera's respondeat superior claim at the summary judgment stage and decided it adversely to him, he would not be able to appeal the court's decision now. Alternatively, if the court had addressed Rivera's claim and decided it in his favor, he would not have brought this appeal. At no point, however, does Rivera argue that this appeal would have been unnecessary if the district court had properly considered his claim. We therefore decline to consider this possibility.

Díaz v. Martínez, 112 F.3d 1, 3 (1st Cir. 1997). Such orders are not "final decisions" in the sense required by 28 U.S.C. § 1291 (conferring appellate jurisdiction over "final decisions" of the district courts). See 28 U.S.C. § 1291 (2000); Vélez-Díaz v. Vega-Irizarry, 421 F.3d 71, 77 (1st Cir. 2005).

One of Rivera's arguments, however, gives us reason to pause -- namely, the argument that the court erred in not finding that he was entitled to qualified immunity for his actions. This presents a more difficult jurisdictional question, as the denial of a claim of qualified immunity at the summary judgment stage is, in limited instances, subject to an interlocutory appeal. As we wrote in Díaz, "where . . . a defendant seeks the shelter of qualified immunity by means of a pretrial motion and the . . . court denies the requested relief, a different result sometimes obtains." Díaz, 112 F.3d at 3. More specifically, if the pretrial rejection of the qualified immunity defense is based on a "purely legal" ground, then the denial may be challenged through an interlocutory appeal. Dwan v. City of Boston, 329 F.3d 275, 278 (1st Cir. 2003). What cannot be appealed is a district court's rejection of the defense based on the court's determination that "the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, 515 U.S. 304, 319-20 (1995); see also Vélez-Díaz, 421 F.3d at 77;

Rodríquez-Rodríquez v. Ortiz-Vélez, 391 F.3d 36, 39-40 (1st Cir. 2004).[5]

To determine, then, whether or not we have jurisdiction to consider Rivera's qualified immunity claim, we must examine the grounds upon which the district court, in its order denying summary judgment, rejected Rivera's qualified immunity argument. The district court -- after laying out the "trifurcated inquiry" for determining whether qualified immunity is available to a particular defendant under § 1983, see Hatch v. Dep't for Children, 274 F.3d 12, 20 (1st Cir. 2001), and running through the first two prongs of the analysis -- stated explicitly, with regard to the third prong, that "[b]ecause there remains a disputed factual issue as to whether Defendants' actions were motivated by Plaintiff's political affiliation, Defendants' motion for summary judgment on this ground is denied."[6]

---

[5] We should point out that there does exist an exception to the Johnson rule. A denial of qualified immunity because of factual issues is still reviewable if qualified immunity is warranted on the plaintiff's version of the facts together with facts that are not disputed, Behrens v. Pelletier, 516 U.S. 299, 312-13 (1996); Rodríquez-Rodríquez, 391 F.3d at 40. No such situation, however, is presented here.

[6] Even if the district court was mistaken in its determination that a disputed factual issue remained, we still would not have jurisdiction to hear this appeal. See Rodríquez-Rodríquez, 391 F.3d at 40 (noting that "Johnson makes clear that this class of legal rulings is not immediately appealable even if the district court is mistaken in thinking that there was a genuine issue").

Clearly, then, the district court declined to enter summary judgment on Rivera's qualified immunity claim based on its determination that "the pretrial record set[] forth a 'genuine' issue of fact for trial." Johnson, 515 U.S. at 320. Accordingly, pursuant to Johnson and its progeny, the district court's decision regarding Rivera's qualified immunity claim may not be challenged through an interlocutory appeal. Thus, as with Rivera's other appellate claims, we do not have jurisdiction.

## III.  Conclusion

For the reasons stated above, we dismiss the appeal for lack of appellate jurisdiction.

**Dismissed**.